Exer Wells CLINE and Roland
Wells, Appellants,

v.

JOHNSON COUNTY BOARD OF
EDUCATION, Appellee.

Supreme Court of Kentucky.

March 11, 1977.

R. B. Harrington, Paintsville, for appellants.

Michael J. Schmitt, Wells, Porter & Schmitt, Paintsville, for appellee.

PALMORE, Justice.

The issue in this case is whether KRS 381.221(1) is constitutional. Enacted in 1960, it provided that every possibility of reverter and right of entry [upon breach of a condition subsequent] created prior to July 1, 1960, would cease to be valid or enforceable 30 years after its creation unless before July 1, 1965, a declaration of intent to preserve it were recorded. We are of the opinion that the judgment of the trial court holding it valid was correct.

There is no factual dispute, nor any necessity for summarizing the manner in which the issue was joined by the pleadings and presented for judgment.

By a deed executed in 1910 Walker Wells and others, some of whom were ancestors of the appellants, conveyed a half-acre parcel of land in Johnson County to the board of education for the sum of $45.00. The habendum clause provided that the property was to be held by the grantee and its successors "so long as used for school purposes and when no longer used for school purposes to revert to parties of the first part . . . said parties of the first part [sic] reserve right to remove school house and furnishings from said premises when they may desire as it is understood that the land only reverts back to while the house and furnishings remain the property of the County Board of Education or school district."

Appellants contend that although the reversionary interest retained by their ancestors was not preserved by the recording of a notice as required by KRS 381.-221(1), because the property is no longer being used for school purposes the fee reverts to them regardless of the statute. Their position is that a possibility of reverter is a vested property right and that its abolition impairs a contract right in violation of Sec. 19 of the Kentucky Constitution. In the main, the Kentucky cases cited in support of that position hold that a possibility of reverter is an alienable interest in property. That much may be conceded, but it does not necessarily follow perforce that the statute is invalid.

In terms of legal technicality, we recognize that a possibility of reverter is not the same thing as a mere expectancy,

which might be described as a hope coupled with some degree of probability. From a practical standpoint, however, there are more similarities than differences. As suggested by its very name, the prospects of a reverter are no less fleeting and amorphous than are those of an expectancy, and no more valuable. The differences are more historic than they are real. That they may, historically, be considered as "vested" no more shields them against the police power of the state than are the vested-in-possession rights of landowners protected from devaluation by zoning laws. A regulation, for example, that eliminates the prospect of converting a piece of real estate to commercial usage is most likely to effect more loss in terms of actual value than is a law that merely requires the owner of a possibility of reverter to renew it of record within a reasonable time as a condition precedent to enforcing it in the future.

In *Atkinson v. Kish*, Ky., 420 S.W.2d 104, 109 (1967), footnote 5, it was said that because "a reversionary right of entry, like a possibility of reverter, *amounts* to no more than an expectancy" (emphasis added), it does not come within the constitutional protection of "vested rights." Dictum though it may have been, we reach the same ultimate conclusion here.

In *Biltmore Village v. Royal*, Fla., 71 So.2d 727, 41 A.L.R.2d 1380 (1954), the Florida Supreme Court held invalid a statute cancelling reverter provisions in plats or deeds after 21 years unless enforced within one year from the effective date of the act. In so doing, it recognized that the one-year saving provision was of no avail to those whose rights of enforcement had not accrued. Our statute, on the contrary, provided a period of five years in which the owner of the right was not required to enforce it, but only to record notice of his intent to preserve it.

Although a possibility of reverter was not an alienable estate under Illinois law, as it is under our law, in *Trustees of Schools of Township No. 1 v. Batdorf*, 6 Ill.2d 486, 130 N.E.2d 111 (1955), the Supreme Court of that state held valid a statute terminating all such interests that had not fallen in within 50 years after their creation. In reaching that result it commented as follows:

"The statute reflects the General Assembly's appraisal of the actual economic significance of these interests, weighed against the inconvenience and expense caused by their continued existence for unlimited periods of time without regard to altered circumstances . . . Our problem . . . [is] reasonableness of the method chosen by the General Assembly. We are unable to say that that method offends the constitutional provisions relied upon."

In *Board of Education of Central Sch. Dist. No. 1 v. Miles*, 15 N.Y.2d 364, 259 N.Y.S.2d 129, 207 N.E.2d 181 (1965), the New York Supreme Court took the view that a statute eliminating this kind of property interest unless preserved by a recorded notice does not come within the scope of the police power. We think that it does, and, in the words of the Illinois opinion, that the General Assembly could properly determine that the economic significance of these interests is so outweighed by the inconvenience and expense cause by their continued existence for unlimited periods of time that the only constitutional problem is the reasonableness of the method chosen to deal with them. We are of the opinion that the method chosen in the form of KRS 381.-221(1), allowing five years in which to file a preservation notice, was entirely reasonable.

The judgment is affirmed.

All concur.